UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  ANTARAMIAN PROPERTIES,
LLC, ANTARAMIAN FAMILY, LLC,
and ANTARAMIAN FAMILY TRUST

_____

JAMES RICHARDS,

      Appellant,

v.                              Case No:  2:21-cv-206-JES

NAPLES BAY RESORT HOLDINGS,
LLC, NAPLES BAY PROPERTIES,
LLC, NBR MANAGER LLC, NAPLES
BAY   RESORT   INVESTMENT
COMPANY   LLC,   SOJOURN
HOSPITALITY   GROUP   LLC,
SUMMIT  MANAGEMENT  GROUP  OF
FLORIDA   LLC,   GULFWATER
INVESTMENT'S LLC, THE CLUB
AT  NAPLES  BAY  RESORT  LLC,
THE RESTAURANT AT NAPLES BAY
RESORT LLC, THE SHOPPES AT
NAPLES BAY RESORT LLC, and
other legal entities as of
yet    identified,   FRED
PEZESHKAN, THOMAS MACIVOR,
RAYMOND    SEHAYEK,    and
KNIGHTSBRIDGE  PARTNERS  OF
NAPLES, LLC,

      Appellees.

_____

**OPINION AND ORDER**

    This matter comes before the Court on an appeal from two

orders of the Bankruptcy Court - an Order Denying Plaintiff's

Motion to Remand Removed Case, and Rulings on Related Pleadings

(Doc. #2-4)[1] and an Order Dismissing Adversary Proceeding With Prejudice and Denying All Pending Motions as Moot. (Doc. #2-5). Plaintiff/Appellant James Richard's Amended Complaint had been removed from state court to the Bankruptcy Court and opened as an adversary proceeding.  In this appeal, appellant argues that the Bankruptcy Court erred in denying his motion to remand the case back to state court and in dismissing with prejudice his operative Second Amended Complaint in the adversary proceeding.  Appellant filed an Initial Brief (Doc. #9), appellees filed an Answer Brief (Doc. #11), and appellant filed a Reply Brief. (Doc. #13). The Court heard oral arguments on October 26, 2022.

For the reasons set forth below, the Court affirms the Bankruptcy Court as to Count I of the Second Amended Complaint, reverses the Bankruptcy Court as to Counts II through V of the Second Amended Complaint, and remands to the Bankruptcy Court with instructions to remand Counts II through V of the Second Amended Complaint to the state court from which it was removed.

**I.**

The district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the United States Bankruptcy Court.  28 U.S.C. § 158(a).  When an adversary

---

[1] The Court will refer to the District Court docket as "Doc.", the Bankruptcy case docket as "Bankr. Doc.", and the Adversary Proceeding docket as "Adv. Doc."

proceeding is involved, "it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation." In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985). "In bankruptcy, adversary proceedings generally are viewed as 'stand-alone lawsuits,' and final judgments issued in adversary proceedings are usually appealable as if the dispute had arisen outside of bankruptcy." In re Boca Arena, Inc., 184 F.3d 1285, 1286 (11th Cir. 1999). "Under general legal principles, earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order." Myers v. Sullivan, 916 F.2d 659, 673 (11th Cir. 1990). Here, the district court has jurisdiction to review both orders identified in the Notice of Appeal.[2]

The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error. In re Stanford, 17 F.4th 116, 121 (11th Cir. 2021); In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009). Issues relating to the subject matter jurisdiction of the Bankruptcy Court are

_____

[2] While an order either remanding or deciding not to remand may not be appealed to the Court of Appeals, 28 U.S.C. § 1452(b), the statute does not preclude an appeal to the district court.

reviewed *de novo*.   Justice Cometh, Ltd. v. Lambert, 426 F.3d 1342, 1343 (11th Cir. 2005).

### II.

The record reflects the following background facts in this case.

### A.  The Naples Bay Resort

The Naples Bay Resort (the Resort) is a mixed use and facilities development established in 2006 by Antaramian Properties, LLC, Antaramian Family, LLC, and Antaramian Family Trust.  The Resort included a hotel, condominiums, commercial space, meeting rooms, residences, a club, and a marina.   The relevant legal documents governing the Resort include a *Master Declaration of Restrictive Covenants, Conditions, Reservations and Easements for the Naples Bay Resort*; a *Master Declaration of Restrictive Covenants, Conditions, Reservations and Easements for the Naples Bay Resort West Parcel;* and various other related documents (collectively referred to as the Real Property Covenant Documents).  The content of these documents has remained the same for all relevant time periods.

### B.  James Richards' Unit

In March 2008, James Richards (Richards or Appellant) purchased Unit 3-301 of the Hotel in the West Parcel of the Resort. Richards' Warranty Deed stated that Richards acquired titled subject to the 2006 Real Property Covenant Documents, among other

- 4 -

things.  Richards purchased the unit for investment purposes. The relevant legal documents governing Richards' unit include a *Master Declaration of Restrictive Covenants, Conditions, Reservations and Easements for the Naples Bay Resort;* a *Master Declaration of Restrictive Covenants, Conditions, Reservations and Easements for the Naples Bay Resort West Parcel;* and various other related documents (collectively referred to as the Original Contract Documents.)

### C. Underlying Bankruptcy Case

On August 29, 2014, Antaramian Properties, LLC, Antaramian Family, LLC, and Antaramian Family Trust, LLC (collectively Debtors) each filed a voluntary petition for reorganization of the Resort pursuant to Chapter 11 of the Bankruptcy Code.  These three petitions were jointly administered in the Bankruptcy Court.  Each of the unit owners in the Resort were listed as creditors and the holders of undisputed claims.  Specifically, in Schedule F, James Richards was listed as a "Hotel Owner" creditor holding an unsecured nonpriority claim for $1,220.12.  (Doc. #2-13, p. 35.)

In due course, an Initial Plan of reorganization was proposed and circulated for comment and objections.  Richards did not make any comments or objections.

Effective April 1, 2015, the Final Modified Joint Plan of Reorganization (Doc. #2-39) was confirmed by the Bankruptcy Court (the Confirmed Plan) in a Confirmation Order.  The Confirmed Plan

relied upon the terms of the Real Property Covenant Documents and the Original Contract Documents, none of which were challenged by any party during the bankruptcy case.   Among other things, the Confirmed Plan determined that certain Hotel Unit Owners were owed their portion of revenue received by the Resort under the Rental Program in July and August of 2014.  (Id., p. 139.)  A distribution check dated April 13, 2015, for $249.27 was made to Richards as the owner of a unit in the Resort.  (Doc. #2-56, ¶¶ 7, 8.) Richards cashed the check.   Pursuant to the Confirmed Plan, effective April 1, 2015, all property of the Debtors revested in the applicable debtor free and clear of all claims or other interests of every kind, except property taxes.

The Confirmed Plan contained the following Discharge and Injunction:

> Except as otherwise explicitly provided in this Plan, to the fullest extent allowable under Section 1141 (d) of the Bankruptcy Code, Confirmation of the Plan shall discharge the Debtors and Plan Proponents from (1) all Claims against the Debtors or the Property (including, but not limited to, Claims based upon any act or omission, transaction, or other activity or security instrument or other agreement of any kind or nature occurring, arising, or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act, or omission of the Debtors) against, (2) liabilities of the Debtors or the Property (including, but not limited to, any liability of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code), (3) all Liens on any Property of the Debtors, (4) obligations of

the Debtors of the Property, and Equity Interests in the Debtors or the Property of the Debtors, whether known to, unknown, or knowable by the Holder thereof, either directly or derivatively through the Debtors, against successors and assigns of the Debtors, based on the same subject matter as any Claim or Equity Interest, in each case regardless of whether or not a Proof of Claim or Proof of Equity Interest was filed, whether or not Allowed and whether or not the Holder of the Claim or Equity Interest voted on or accepted the Plan. Except for the obligations expressly imposed by, and as otherwise provided in, the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment, and termination of all such Claims against, liabilities of, Liens on, obligations of, and Equity Interests in the Debtors and/or Property of the Debtors. In addition, the Confirmation Order shall operate as a general adjudication and resolution with prejudice, as of the Effective Date, of all pending legal proceedings against the Debtors and the Property, as well as any proceedings not yet instituted against the Debtors or the Property, except as otherwise provided in the Plan.

As provided in Section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim, Lien, or Equity Interest or the commencement of legal action or process against the Debtors or against the property of the Debtors, subject to the provisions of the Plan.

Furthermore, but in no way limited to the generality of the foregoing discharge and injunction, except for the obligations expressly imposed by, or as otherwise provided for in, the Plan, any Person or Governmental Unit accepting any Distribution pursuant to the Plan shall be presumed conclusively to have released the Debtors and successors and

> assigns of the Debtors, and the Plan
> Proponents, their respective members,
> officers, directors, employees and/or agents,
> including professionals, from any Cause of
> Action or Litigation Claim based on the same
> subject matter as the Claim or Equity Interest
> on which the Distribution is received. This
> release shall be enforceable as a matter of
> contract against any Person or Governmental
> Unit that acquires any Distribution pursuant
> to the Plan.

(Id., pp. 160-161.)  The Confirmation Order also provided that the Bankruptcy Court "retains exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permissible under applicable law." (Doc. #2-40, p. 18 ¶ 25.)  A Final Decree was issued on March 21, 2016, and the jointly administered bankruptcy cases were closed. (Doc. #2-35.)

### D. Subsequent State Court Litigation

On August 20, 2020, Richards filed a Complaint in state court against Antaramian Properties, LLC n/k/a Naples Bay Properties LLC (Antaramian Props.), Naples Bay Resort Investment Company LLC (Naples Bay), Knightsbridge Partners of Naples LLC (Knightsbridge), Sojourn Hospitality Group LLC (Sojourn), Summit Management Group of Florida LLC (Summit), Gulfwater Investments LLC (Gulfwater), F. Fred Pezeshkan (Pezeshkan) and Thomas MacIvor (MacIvor) (collectively the State Court Defendants). (Doc. #2-34.) An Amended Complaint was filed on October 4, 2020. (Doc. #2-42.) The Amended Complaint sought declaratory, injunctive, and

supplemental relief in two counts and monetary relief in four additional counts.

**E.  Removal of State Court Case to Bankruptcy Court**

On October 5, 2020, the State Court Defendants removed the Amended Complaint to the Bankruptcy Court pursuant to 28 U.S.C. § 1452.  The State Court Defendants asserted that the claims in the Amended Complaint were matters arising under Title 11 of the United States Code or were related to the prior Chapter 11 cases previously filed by the Debtors.  (Doc. #2-34.)  The Amended Complaint was opened as an adversary proceeding by the Bankruptcy Court, and the underlying bankruptcy cases were eventually reopened.

The parties disputed, among other things, whether the state court case was properly before the Bankruptcy Court, i.e., whether the Bankruptcy Court had subject matter jurisdiction.  On October 27, 2020, Richards filed a Motion to Remand Removed Case, arguing that the removal "is inequitable as it [the Amended Complaint] seeks to enforce certain releases and injunctions for legal action taken by the plaintiff (moving party) after confirmation of the plan of reorganization and independent of any plan provision material to the removed case." (Doc. #2-51, ¶ 3.)  On October 26, 2020, defendants filed a Motion to Enforce Discharge, Injunction and Related Provisions in Confirmed Chapter 11 Plan (Doc. #12-2) in the underlying Bankruptcy cases, arguing that only the

Bankruptcy Court could enforce the discharge, injunction, and related provisions in the Confirmed Plan, and therefore the Bankruptcy Court had subject matter jurisdiction over the removed state court Amended Complaint.

At a November 19, 2020, hearing, the Bankruptcy Court concluded:

> Based on the Amended Complaint, as it's presently framed, I find that it's appropriate to deny the Motion to Remand because the Debtor's confirmation -- the confirmation of the Debtor's plan and the discharge and injunction provisions of the Plan likely bar any claims that arose prior to the confirmation order, prior to the bankruptcy filing, that relate to allegations that the master declaration and other condo documents are unconscionable or unenforceable or one-sided or illegal.
>
> So based on the framing of the Amended Complaint, as it presently stands, I'm going to deny the Motion to Remand. Having denied the Motion to Remand, I think it's appropriate to give [plaintiff's counsel] an opportunity to respond to the Motion to Dismiss and either stand on the Amended Complaint and I'll rule on the Amended Complaint.

(Doc. #2-58, p. 28.)  On December 2, 2020, the Bankruptcy Court issued an Order denying remand and granting the motion to dismiss, without prejudice to filing a Second Amended Complaint within 30 days.  (Doc. #2-4.)

On December 22, 2020, plaintiff filed a Second Amended Complaint for Damages and for Declaratory, Injunctive and Supplemental Relief (Doc. #2-60).   The material factual

allegations in the operative Second Amended Complaint may be summarized as follows:

- The Naples Bay Resort is a mixed use and facilities development established pursuant to a Master Declaration on September 18, 2006, by developer Basil Street Partners, LLC (Basil Street) and others. The Resort includes a hotel, condos, commercial space, meeting rooms, residences, a club, and a marina. (Doc. #2-60, ¶ 26.)

- Basil Street filed for bankruptcy protection in 2013, which resulted in a Confirmation Order on April 1, 2015. (Id., ¶ 27.)

- Plaintiff owns a hotel condo unit in Building 3 of the West Parcel condominium, which is governed by the Master Declaration of Restrictive Covenants, Conditions, Reservations and Easements for the Naples Bay Resort West Parcel, Bylaws and Articles of Incorporation (Master Declaration - West Parcel). The West Parcel consists of 85 units separately owned by individual unit owners (IUOs), who are members of the Hotel at Naples Bay Resort Condominium Association, Inc. (Hotel Condo Assoc.). Richards and the other IUOs purchased the units as a financial investment. (Id., ¶¶ 28-31.)

- After completion of the Basil Street bankruptcy proceedings, its principals and members reacquired control of the Resort through various LLC entities. (<u>Id.</u>, ¶ 35.)

- Richards "is informed, believes and alleges" that defendants NB Properties, NBR Investment, Knightsbridge Partners, Sojourn Hospitality, Summit Management and Gulfwater are successors to Basil Street and are therefore bound by the provisions of the Master Declaration - West Parcel and other condominium documents. (<u>Id.</u>, ¶ 37.)

- Richards "is informed, believes and therefore alleges" that defendants Pezeshken, MacIvor and Zand engineered a take-over of successor ownership from Basis Street after its bankruptcy through a maze of LLC entities, which he characterizes as "fronts," and are therefore "successors" to the developer under the pertinent documents. (<u>Id.</u> at ¶ 38.) There are at least 17 LLC entities in the "maze" of interrelated and interlocking business entities being used as "fronts" for the individual defendants. (<u>Id.</u> at ¶ 41.)

- Richards "believes and therefore alleges" that all defendant entities are the alter egos of Pezeshkan, MacIvor and Zand. (Id. at ¶ 39.)

- NB Properties "is believed" to be the principal controlling entity of the Resort, and Richards refers to it as the commercial component owner (CCO). (Id. at ¶ 40.)

- Richards alleges that NB Properties, as CCO, and its other conspirators engaged in a long-term pattern of abusive actions "to oppress the IUOs" and plaintiff by imposing unilateral, excessive, and improper charges, whether the IUOs are in the Resort's Rental Program or have opted-out. The charges include a daily rental fee of $250; a daily 'administrative charge' from 10% to 20%; club dues to use the pool and spa (about $4,000 a year); and an initial $40,000 as a club fee. Additionally, NB Properties recently notified plaintiff and the IUOs that it would be increasing fees to cover restaurant losses from the pandemic, even though the IUOs have no ownership interest in the operation, and that NB Properties would be suspending rental income distributions to cover losses. (Id., ¶¶ 42A-G, 43, 44.)

- The successor developer purchased 47 of the hotel condo units to obtain majority ownership, summarily recall the elected directors, and install their own directors. (<u>Id.</u>, ¶ 50.)

- The CCO has failed to allow inspection of documents supporting expenditures.  On the only occasion the CCO allowed the IUO's accountant to inspect financial records, critical records were withheld and it invoiced the IUOs for $39,125.00.  (<u>Id.</u>, ¶ 63.)

To address concerns raised by the Bankruptcy Court in a prior hearing, the Second Amended Complaint also stated "that ***all causes of action and claims for damages set forth in this Second Amended Complaint arose subsequent to the Antaramian Properties LLC Chapter 11 Bankruptcy Case No, 9:14-10445-FMD ("Antaramian Petition") and after the April 1, 2015 Confirmation Order ("Order") in that case***. More specifically, ***Richards' claims herein are wholly unrelated to any issues or aspects or the Debtors in the Antaramian Petition***."  (Doc. #2-60, ¶ 20) (emphasis in original).  The Second Amended Complaint goes on to disavow any relationship to the estates or the Chapter 11 cases.  (<u>Id.</u>, ¶¶ 21-23.)

The Second Amended Complaint set forth five counts:

- In Count I, plaintiff sought a declaration that since and after April 1, 2015, defendants' use and application

of the Master Declaration of the Resort and the Master Declaration - West Parcel is unconscionable and/or a contract of adhesion that deprived him and others of valuable property rights.   Count I also seeks an injunction against the abusive actions and excessive charges.

- In Count II, plaintiff alleges the conduct of defendants breached "both the letter and spirit" of the Master Declaration and other documents, which constitute a contract.

- In Count III, plaintiff alleges that the various condominium documents constitute a contract, which includes an implied covenant of good faith and fair dealing.   Count III asserts that the contracts are ambiguous as to the conduct in question, but that defendants have breached their obligations of good faith.

- In Count IV, plaintiff alleges that the conduct of defendants breached implicit fiduciary duties.

- Finally, in Count V plaintiff alleges that defendants' conduct constituted usurpation of a business opportunity.

Defendants thereafter filed a Motion to Dismiss Second Amended Complaint (Doc. #2-67) and Richards filed an Amended Motion to Remand Removed Case and/or to Abstain (Doc. #2-66). At a January 20, 2021, hearing the Bankruptcy Court noted that

> Debtor's confirmation -- the confirmation of the Debtor's plan and the discharge and injunction provisions of the Plan likely bar any claims that arose prior to the confirmation order, prior to the bankruptcy filing, that relate to allegations that the master declaration and other condo documents are unconscionable or unenforceable or one-sided or illegal.

(Doc. #2-58, p. 28.) The Bankruptcy Court concluded that it had subject matter jurisdiction because at least Count I of the Second Amended may have been discharged under the Confirmed Plan and Confirmation Order. The Bankruptcy Court found that the other counts were not sufficiently pled to state causes of action or allow the Bankruptcy Court to determine if they were also barred. The Bankruptcy Court noted:

> And if what I'm dealing with is purely allegations of postpetition breaches of the controlling documents, I might find at that point that it was appropriate to remand the case to State Court because, that's right, I do not need to address the postpetition conduct of the Debtor or the Debtor's successors in interest anymore.
>
> . . . .
>
> But to the extent that Mr. Richards' claims are rooted in the preconfirmation past, then the discharge injunction is implicated.

- 16 -

(Id., p. 29.)

The Bankruptcy Court determined that the Second Amended Complaint suffered from various pleading deficiencies:

> I don't have a Complaint that states a claim for relief. There's conclusory, alter ego allegations. If there's an alter-ego relationship between some of the parties, that's got to be pled. The elements of an alter-ego relationship have to be pled.
>
> That might be a good declaratory relief count for a determination that the parties are alter egos of each other, okay? But there's no pleading that would support -- there's no allegations that would support the conclusory allegation that alter ego relationships exist.
>
> In looking at the Complaint, Count One – or I'm talking about the Amended Complaint here. Count One was for declaratory relief. That seems to me to be really rooted in the pre-confirmation past because it's asking for a determination that the Master Declaration is unconscionable and/or a contract of adhesion. So that would be pre-confirmation, and that doesn't seem to me to be an appropriate count.
>
> Count Two, the breach of contract claim, I just discussed briefly. If there's a breach of contract, then Mr. Richards needs to allege what the breach of the contract is.
>
> Count Three -- hold on one second. Count Three, the breach of the implied covenant of good faith and fair dealing. If there are elements to a claim for the breach of the covenant of good faith and fair dealing, those elements are not pledged -- excuse me, not alleged. And Mr. Guso laid that out in his Motion to Dismiss.
>
> Count Five alleges a breach of fiduciary duty without any allegations that would support the

> Court's finding that a fiduciary duty exists
> between the parties.
>
> And, again, likewise with Count Six,
> usurpation of business opportunity. The
> allegations that would support a claim for
> usurpation of a business opportunity just
> aren't there.

(Doc. #2-71, pp. 18-19.)   On January 22, 2021, the Bankruptcy
Court entered an Order dismissing the Second Amended Complaint but
allowing the filing of a third amended complaint within 21 days.
(Do. #2-70.)

Richards failed to file a third amended complaint.   On
February 26, 2021, the Bankruptcy Court issued an Order Dismissing
Adversary Proceeding With Prejudice and Denying All Pending
Motions as Moot (Doc.#2-5) because plaintiff had failed to file a
third amended complaint. The amended motion to remand was denied
as moot, and the adversary proceeding was closed.

This timely appeal followed.

### III.

The threshold issue is whether the federal district court,
acting through the Bankruptcy Court, had subject matter
jurisdiction over the civil action which had originally been filed
in state court.   Appellant Richards asserts that the Bankruptcy
Court lacked subject matter jurisdiction over the claims in the
state case, and therefore erred in failing to remand his case back
to state court.   According to Richards, his state court lawsuit,

filed more than four years after the Bankruptcy Court's final decree, alleged conduct taking place <u>after</u> the final Bankruptcy Court judgment which was independent of that judgment. Additionally, Richards asserts that the confirmation order's discharge, injunction and release provisions are silent as to the Master Declaration that is the subject of the adversary proceeding, and the case is not a core proceeding.

Appellees respond that Richards was a scheduled creditor with actual notice of the Chapter 11 cases but failed to object to or appeal the confirmation of the Plan. They assert that the Bankruptcy Court had jurisdiction to determine if matters were within the scope of its injunction, including the state court case they removed to the Bankruptcy Court.

**A. Subject Matter Jurisdiction General Principles**

Since lower federal courts only have the jurisdiction provided by Congress, <u>Exxon Mobil Corp. v. Allapattah Services, Inc.</u>, 545 U.S. 546, 552 (2005) (federal "district courts may not exercise jurisdiction absent a statutory basis"), the Court turns to the relevant statutes.

"The procedure for invoking the removal jurisdiction of the federal courts is governed by 28 U.S.C. §§ 1441 to 1452." <u>Peterson v. BMI Refractories</u>, 124 F.3d 1386, 1391 (11th Cir. 1997). As to bankruptcy-related cases, "[a] party may remove any claim or cause of action in a civil action [with specific exceptions] . . . to

the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).

Turning to § 1334, a federal district court has "original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1334(a), i.e., the bankruptcy case itself. Additionally, a federal district court has "original but not exclusive jurisdiction" over three categories of proceedings: (1) a civil proceeding 'arising under Title 11'; (2) a civil proceeding 'arising in cases under title 11'; and (3) a civil proceeding "related to cases under title 11." In re Toledo, 170 F.3d 1340, 1344 (11th Cir. 1999) (citing 28 U.S.C. § 1334(b)). "The bankruptcy court's jurisdiction is derivative of and dependent upon these three bases." Id. (citing Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995)).

A claim "arises under" Title 11 if it invokes a substantive right created by the Bankruptcy Code. In re Toledo, 170 F.3d at 1345. A claim "arises in" a case under Title 11 if it involves typical administrative-type matters, i.e., "matters that could arise only in bankruptcy." Id. A claim is sufficiently "related to" Title 11 for jurisdictional purposes when the outcome of the proceeding "could conceivably have an effect on the estate being administered in bankruptcy" "even if they are not proceedings

- 20 -

'against the debtor or against the debtor's property.'" Wortley v. Bakst, 844 F.3d 1313, 1318 (11th Cir. 2017) (citations omitted). See also In re Lemco Gypsum, Inc., 910 F.2d 784, 788 (11th Cir. 1990). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Wortley, 844 F.3d at 1318-19 (citation and internal quotation marks omitted in original).  The Court looks to whether subject matter jurisdiction existed as of the date of the filing of the Notice of Removal.  In re Lindsey, 854 F. App'x 301, 306 (11th Cir. 2021).

Subject to constitutional limitations, the bankruptcy courts, in turn, exercise the powers delegated to them by the district courts pursuant to 28 U.S.C. § 157.  "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."  28 U.S.C. § 157(b)(1).  Additionally, a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) (citation omitted).  See also In re Kachkar, 769 F. App'x 673, 678-79 (11th Cir. 2019).  Under 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a

- 21 -

case under title 11 shall be referred to the bankruptcy judges for the district."  On February 22, 2012, a Standing Order of Reference was issued for the Middle District of Florida, 6:12-mc-26-ACC, providing that all cases "arising under title 11 or arising in or related to a case under title 11 are referred" to the Bankruptcy Court pursuant to § 157(a).

As with any removed case, if at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, "the case shall be remanded." 28 U.S.C. § 1447(c). Additionally, in a bankruptcy-related removed case, the federal district court "may remand" a removed claim or cause of action "on any equitable ground."  28 U.S.C. § 1452(b).

**B. Jurisdiction Over Present Case**

It is clear that none of the claims in the state court case were part of the bankruptcy case itself or "arose under" or "arose in" a case under the Bankruptcy Code.  Therefore, the only potentially relevant category of proceedings over which the district court is granted jurisdiction in § 1334(b) is proceedings "related to cases under title 11."

As a threshold matter, the Court does not understand appellant to argue that the Bankruptcy Court lacked jurisdiction to decide whether it had jurisdiction.  It is clear that a federal court, including a bankruptcy court, "always has jurisdiction to determine its own jurisdiction."  In re Nica Holdings, Inc., 810

F.3d 781, 789 (11th Cir. 2015). Rather, appellant argues that Bankruptcy Court simply came to the wrong result in its jurisdictional determination.   The Court addresses Count I separately from the remaining counts.

   **(1)  Count I Claim**

   As discussed earlier, Count I sought a declaration that all the original Real Property Covenant Documents and the Original Contract Documents were unconscionable contracts or contracts of adhesion, and therefore unenforceable.   The Second Amended Complaint makes clear that it is the documents which are claimed to be unconscionable are this original documents.   The second Amended Complaint limits its disclaimer in paragraphs 20-23 to "claims for damages," which excludes Count I.   At oral argument, appellant's counsel confirmed that the relief sought related to the original documents.

   After hearing arguments, the Bankruptcy Court concluded:

> Debtor's confirmation -- the confirmation of
> the Debtor's plan and the discharge and
> injunction provisions of the Plan likely bar
> any claims that arose prior to the
> confirmation order, prior to the bankruptcy
> filing, that relate to allegations that the
> master declaration and other condo documents
> are unconscionable or unenforceable or one-
> sided or illegal.

(Doc. #2-58, p. 28.)   Upon *de novo* review, the undersigned finds that the Bankruptcy Court was clearly correct in finding that Count I "related to" the prior bankruptcy proceedings, thereby

establishing subject matter jurisdiction in the Bankruptcy Court as to Count I.

The Confirmed Plan and the Order of Confirmation rely extensively on the validity and enforceability of the original contract documents.  Many of the definitions in the contracts are adopted in the Confirmed Plan.  The ability of creditors to assert and enforce a claim, and the amount of the claim, are defendant upon the validity and enforceability of the original contract documents.  A claim which asserts that portions of the original contracts are unenforceable would cause extensive turmoil in the Confirmed Plan and the bankruptcy estate.  Thus, it is clear that the outcome of Count I "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Wortley, 844 F.3d at 1318–19.  Additionally, the Bankruptcy Court maintained jurisdiction as the court that issued the injunction. (Doc. #2-68; Doc. #12-2, p. 201.)  Alderwoods Group, Inc. v. Garcia, 682 F.2d 958 (11th Cir. 2012).

While the Bankruptcy Court was correct as to its jurisdiction over Count I, it is a separate question as to whether Count I is sufficiently pled.  The Bankruptcy Count found that it was not, and the undersigned's *de novo* review establishes the same.

A district court's dismissal of a complaint with prejudice for failure to state a claim is subject to a *de novo* standard of review. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). We must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, see [Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014)], but the allegations must nevertheless state a claim for relief that is plausible—and not merely possible—on its face, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Under this standard, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937.

Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017).

The Second Amended Complaint failed to plausibly state a claim for declaratory or injunctive relief on the basis that the Original Contract Documents were unconscionable or a contract of adhesion. Florida law is clear as to the requirements for such claims.

The determination of unconscionability is an issue of law. [ ] To prevail on a claim that a contractual provision is unconscionable, a party must establish both procedural and substantive unconscionability. [ ] Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand disputed contract terms. [ ]

. . . .

> Substantive unconscionability requires an
> assessment of whether the contract terms are
> "so 'outrageously unfair' as to 'shock the
> judicial conscience.'" [ ] A substantively
> unconscionable contract is one that "no man in
> his senses and not under delusion would make
> on the one hand, and as no honest and fair man
> would accept on the other." [ ] Although a
> party challenging the contract must establish
> both procedural and substantive
> unconscionability, both do not have to be
> present to the same degree. [ ] Instead, the
> court can use a "sliding scale" approach when
> both procedural and substantive
> unconscionability are present to some degree.
> The more substantively oppressive the contract
> term, the less evidence of procedural
> unconscionability is required to conclude that
> the term is unenforceable, and vice versa.[ ]

12550 Biscayne Condo. Ass'n, Inc. v. NRD Investments, LLC, 336 So. 3d 750, 754-55 (Fla. 3d DCA 2021) (internal citations omitted). See also Addit, LLC v. Hengesbach, 341 So. 3d 362, 366 (Fla. 2d DCA 2022); Osprey Health Care Ctr., LLC v. Pascazi by & through Outwater, 329 So. 3d 177, 181 (Fla. 2d DCA 2021). A contract of adhesion is defined as a "standardized contract form offered to consumers of goods and services on essentially [a] 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." Addit, LLC 341 So. 3d at 367 (citation omitted).

Upon de novo review, Count I fails to plausibly plead either procedural or substantive unconscionability or that it was a

contract of adhesion.  Indeed, almost nothing is alleged about the initial purchase of the unit by Richards other than that it was as a financial investment.  Richards asks for a declaration of unconscionability without stating any facts in support of why the Master Declaration was a contract of adhesion.

Plaintiff elected not to file a Third Amended Complaint when given the opportunity to do so.  Since Count I failed to plausibly state a cause of action, and plaintiff declined to file an amended complaint, dismissal with prejudice was appropriate.

**(2)   Counts II through V**

The Bankruptcy Court also had jurisdiction to review whether it had jurisdiction to proceed with Counts II through V of the Second Amended Complaint.  <u>In re Nica Holdings, Inc.</u>, 810 F.3d at 789.  After a <i>de novo</i> review, the undersigned concludes that the Bankruptcy Court's continued exercise of jurisdiction over these four counts was erroneous.

Unlike Court I, which asserts that the Original Contract Documents were unconscionable and therefore unenforceable, the remaining four counts are premised on the position that the Original Contract Documents are valid and fully enforceable. While it is true that the Second Amended Complaint contains few specific dates, it clearly states that the events which form the basis for these counts occurred <u>after</u> the bankruptcy proceedings had ceased ("since April 1, 2015").  While the Bankruptcy Court,

and this Court, may prefer more specific dates in a complaint, such specificity is not generally required.  <u>In re Southeast Banking Corp.</u>, 69 F.3d 1539, 1551 (11th Cir. 1995) ("[F]or better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").  If appellant prevails on any of the four substantive counts, there is no potential impact on the bankruptcy estate.  Accordingly, the Bankruptcy Court lacked jurisdiction over Counts II through V, and should have remanded these claims.  Lacking jurisdiction, there was no authority to determine the sufficiency or insufficiency of the factual allegations, a matter which is for the state court if raised there.

Accordingly, it is hereby

**ORDERED:**

1. The Bankruptcy Court's Order Denying Plaintiff's Motion To Remand Removed Case, And Rulings On Related Pleadings and Order Dismissing Adversary Proceeding With Prejudice and Denying All Pending Motions as Moot are **AFFIRMED IN PART AND REVERSED IN PART.**

2. The Court affirms the Bankruptcy Court as to Count I of the Second Amended Complaint, finding the Bankruptcy Court did have subject matter jurisdiction over Count I, Count I did not plausibly state a cause of action upon which relief

may be granted, and dismissal with prejudice was proper when appellant declined to file a third amended complaint.

3. The Court reverses the Bankruptcy Court as to Counts II through V of the Second Amended Complaint, finding that the Bankruptcy Court did not have continuing jurisdiction over these claims, and that the issue of the sufficiency of the pleading as to these counts is for the state court.

4. The Court remands to the Bankruptcy Court with instructions to remand Counts II through V of the Second Amended Complaint to the state court from which it was removed.

5. The Clerk shall transmit a copy of this Opinion and Order to the Clerk of the Bankruptcy Court and close the appellate file.

**DONE and ORDERED** at Fort Myers, Florida, this   4th   day of November 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Caryl E. Delano
Counsel of Record